IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDA BORBAS BECKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-CV-239-JHP-FHM |
| | ) |
| OMNI AIR INTERNATIONAL, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment and Brief in Support of Defendant's Motion for Summary Judgment (Dkt. #30 and Dkt. #31, respectively). Plaintiff Linda Borbas Becker ("Becker") filed a complaint (Dkt. #2) on April 26, 2012 alleging that defendant Omni Air International, Inc. ("Omni") discriminated against her in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.* (Title VII). Omni now moves for summary judgment on the ground that the undisputed facts fail to establish any genuine issue of material fact. Omni's Motion for Summary Judgment and Brief in Support addressed three claims under Title VII: (1) sexual harassment; (2) retaliation; and (3) gender discrimination based on Omni's termination of Becker's employment. Subsequent to Omni's filing of its Motion for Summary Judgment and prior to Becker's filing of Plaintiff's Response Brief in Opposition to Defendant's Motion for Summary Judgment (Dkt. #46), Becker withdrew the sexual harassment and retaliation claims. Thus, the only claim before the Court is Becker's gender discrimination claim in connection with the termination of her employment.

Omni asserts that Becker, hired to train as a First Officer on Omni's Boeing 777 ("777") fleet of commercial aircraft, was dismissed from its training program when she failed to demonstrate adequate proficiency in the operation of the aircraft. Omni submits that Becker's

1

piloting deficiencies constitute a business related non-discriminatory basis for her employment termination and that Becker has failed in her burden to present evidence showing that Omni's proffered reason is untrue and therefore a pretext for unlawful gender discrimination. For the reasons set forth below, the Court **grants** Omni's Motion for Summary Judgment.

## I. Background

Omni is a commercial air carrier authorized by the Federal Aviation Administration ("FAA") to provide domestic and international charter passenger service. Becker is a professional pilot who holds an Airline Transport Pilot certificate. Prior to her hire at Omni, Becker worked as a pilot for a series of commuter, corporate and charter airlines. (Dkt. #31, p. 10, Facts 21-22; Dkt. #46, p. 9). In February 2011, Becker was accepted into the Omni pilot training program and began training the following June to become a First Officer assigned to Omni's 777 fleet. (Dkt. # 31, p. 4, Fact 1; Dkt. #46, p. 1). The 777 has a flying range of 7,000 miles, a passenger capacity of over 300, and a take-off weight of around 650,000 pounds. (Dkt. #31, p. 4, Fact 2; Dkt. #46, p. 1). Becker had never previously operated an aircraft of that size, range, and sophistication. (*Id.*).

Becker's training consisted of classroom training at Omni, simulator training at Boeing Training and Flight Services Center ("Boeing") in Seattle, and operating experience ("OE") training on an Omni 777 aircraft during regular passenger service. (Dkt. #31, p. 4, Facts 3 -5; (Dkt. #46, p. 1). Becker entered classroom training at Omni's headquarters in Tulsa as an introduction to the operations, procedures, and policies of Omni. (Dkt. #31, p. 4, Fact 3; Dkt. #46, p. 1). Becker then attended simulator training at the Boeing facility, where she was trained by Boeing instructors under a contract with Omni. (Dkt. #31, p. 4, Fact 4; Dkt. # 46, p. 1). During simulator training, a trainee is taught the functions of the various flight and navigation

systems and the procedures required to operate these systems. (*Id.*). During Becker's simulator training, her Boeing instructors determined a need for remedial training. (Dkt. #31, p. 4-5, Fact 5; Dkt. #46, p. 1). Omni approved the request to provide Becker with additional simulator time. (*Id.*). With the aid of remedial simulator training time, Becker passed a proficiency check administered in the simulator and was released to the OE phase of training. (*Id.*).

OE is a FAA-mandated training component, the purpose of which is to require trainees to demonstrate that they can transfer the lessons learned in the simulator to actual flight conditions faced in day-to-day airline operations. (Dkt. #31, p. 5, Fact 6, Dkt. #46, p. 1). OE training is under the supervision of specially trained Check Airmen employed by Omni and certified by the FAA. (*Id.*). After the required sequence of observation, a Check Airman must certify that the trainee is qualified to safely perform the duties of a flight crewmember before the trainee can be permitted to fly as a pilot in regular day-to-day service. (*Id.*). FAA regulations require a minimum of 25 hours of OE training consisting of at least four flight segments, during two of which the trainee pilot must conduct the take-off and landing. (Dkt. #31, p. 5, Fact 7, Dkt. #46, p. 1-2). Omni's First Officer training program provides for up to 35 OE hours with a minimum of four flight segments during which the trainee pilot is expected to demonstrate his or her proficiency to operate the aircraft. (*Id.*). Omni's guidelines provide that the OE period can be extended if warranted. (*Id.*).

On October 20, 22, 26 and 27, 2011, Check Airman Captain Robert Lyznicki observed Becker's performance on four flight segments covering more than 30 flight hours. (Dkt. #31, p. 5, Fact 8; Dkt. #46, p. 2). At the conclusion of the four flight segments, Lyznicki called Omni's Flight Standards Department to report various deficiencies in Becker's performance, including those relating to a practice smoke drill, pre-flight set up flows, after landing flows, and confusion

with descent planning. (Dkt. #31, p. 5, Fact 9; Dkt. #46, p. 2). Becker concedes that during her training with Lyznicki, she received what she termed "constructive and negative feedback" and that at the end of the four-segment OE training sequence Lyznicki indicated that she required additional training. (Dkt. #63, p. 3).

Captain Paul Dainty was Becker's next assigned Check Airman. (Dkt. #31, p. 6, Fact 11; Dkt. #46, p. 3). On October 31, 2011, he observed Becker on the first flight segment of a five-segment OE trip. (*Id.*). On that segment, Becker was to run various pre-flight procedures and monitor and update the aircraft's computerized flight systems throughout the flight. (*Id.*). At the conclusion of this segment, Dainty called Captain Larry Vonderschmidt, Omni's Manager of Flight Standards, to discuss Becker's deficiencies. (*Id.*). At Vonderschmidt's request, Dainty documented his concerns in an email to Flight Standards dated November 3, 2011. (*Id.*).

Dainty's email report stated that "[o]verall her performance was not where I would expect it to be after 35+ hrs of OE and several non-flying legs" and that Becker "demonstrated a lack of general airmanship/situational awareness." (Dkt. #31, p. 6-7, Fact 12; Dkt. #46, p. 4). He noted that (1) her cockpit set-up flows were out of order and he expected better after 4-5 previous cockpit set-ups; (2) her operation of systems for takeoff performance was abysmal because she had no understanding of why the data was incorrect or even that it was incorrect; and (3) she failed to pull—let alone open—the enroute charts and she was confused about the charts. (*Id.*). After learning of Becker's deficiencies as reported by Dainty, Omni's Chief Pilot James Straley decided to have Captain Gary Brandenburg observe Becker's performance on the next OE flight segments. (Dkt. #31, p. 7, Fact 13; Dkt. #46, p. 4). Brandenburg is Omni's Flight Standards Captain for the 777. (Dkt. #31, p. 2; Exh. J). He is also a FAA certified Check Airman

and is approved by the FAA to provide simulator instruction and to administer type rating proficiency checks in the 777. (Dkt. #63, Exh. C).

On November 8-10, 2011, Brandenburg accompanied Becker and Dainty on four flight segments. (Dkt. #31, p. 7, Fact 14; Dkt. #46, p. 4). At the beginning of his observation, Becker had approximately 40 hours of OE consisting of six flight segments. (*Id.*). On November 11, 2011, after the completion of these four additional flight segments, Brandenburg called Straley and reported his observation of the same types of deficiencies that had earlier been reported by Lyznicki and Dainty. (Dkt. #31, p. 7, Fact 11; Dkt. #46, p. 4). Straley asked Brandenburg to document the conversation, which he did in an email to Straley dated November 12, 2011. (*Id.*) The deficiencies noted by Brandenburg included repeated lack of familiarity with the aircraft's computer systems as well as basic piloting errors such as calling for flap retraction twice during takeoff/climbout without sufficient airspeed, slowing the aircraft below minimum speed on an approach, causing the autothrottle/stall protection to intervene, and leveling the aircraft off at an unassigned altitude. (Dkt. #31, p. 7-8, Fact 16; Dkt. #46, p. 5). Brandenburg concluded his analysis of Becker's performance by observing:

> In general, I thought [Becker] is simply in over her head. Addition[al] OE at this point would not be warranted in my opinion. If additional training is desired, I would anticipate 2-3 simulator sessions and at least another 50 hours of OE. This would be no guarantee and may in fact not result in the necessary improvement.

(*Id.*).

Dainty observed similar deficiencies in those four flight segments. He expressed these concerns verbally to Straley and in an email to Flight Standards. (Dkt. #31, p. 8-9, Fact 17; Dkt. # 46, p. 5-6). His email reported the following:

> Completed the trip sequence..., [Becker] flew all 4 legs with no appreciable improvement in her PF/PM performance....At this time the student is not

> proficient enough to be released to Line operations, nor is she progressing normally.
>
> …
>
> The student repeatedly called for flap retraction at inappropriate speeds during takeoff and appeared to not understand the implication of such actions. During one episode the aircraft was 15kts below the minimum maneuvering speed for the current configuration and not accelerating….The student at one point allowed the aircraft to decelerate to the Auto-Throttle Stall Protection Minimum Maneuvering Speed. When this was announced to her she simply stared at the PFD without reacting in any way as the aircraft decelerated. At this point I began extending flaps to make the aircraft configuration appropriate for the commanded speed. The student simply sat there and did not respond…This event was…unacceptable….The student STILL CANNOT complete her cockpit set-up flow without prompting. Student makes frequent errors during the set up flow and does not pre-flight certain instruments correctly despite repeated training….On multiple occasions, each debriefed thoroughly, the student failed to level the aircraft at the assigned attitude….This issue could be particularly dangerous if the student was left unattended on the flightdeck as she was unaware that the aircraft had leveled off at an inappropriate altitude on 2 separate occasions….The student was counseled EVERY leg to place her hand on the throttles during the approach. During the last approach into BWI she had her hands in her lap and her feet on the floor at 1200Ft – at this point she was (as usual) instructed to place her hands on the controls, she then discovered that her rudder pedals were not adjusted properly and handed the aircraft off at approximately 1000ft AGL. This is NOT acceptable under any circumstances and demonstrates a lack of both basis airmanship and situational awareness.
>
> I have informed [Becker] that she has exceeded the 35hr OE timeline and that I am unable to recommend her for Line operations due to her current proficiency level. Captain Brandenburg was also present during this debriefing.

(Id.).

After the four flight segments, Dainty and Brandenburg debriefed Becker on her deficiencies and advised her that she would not be released to fly in regular operations. (Dkt. #63, p. 4). She was sent home to await word from Omni. (Id.). Becker's employment was terminated effective November 14, 2011. (Dkt. #31, p. 10, Fact 20; Dkt. #46, Exh. O).

Becker acknowledges that Omni is open to the hiring of female pilots as evidenced by the fact that Omni not only hired her but also spent thousands of dollars on her training. [Dkt. #31, p. 14, Fact 40; Dkt. #46, p. 9). Becker further admits that there were shortcomings in her

6

performance during OE and that these were brought to her attention during the training process. (Dkt. #63, p. 3-4). However, Becker contends that her mistakes were not severe enough to warrant termination. In support of this contention, Becker presented an expert witness report prepared by Paul Bjornstad, a 777 pilot and Check Airman employed by another airline, who opined that the Omni Check Airmen were overly critical of Becker's performance and with additional training, she could have mastered operation of the 777. (Dkt. #46, Exh. D).

Becker also contends that Omni was deficient in the manner in which it administered her OE training and conducted her termination. Becker's contentions in this regard can be summarized as follows: (1) Omni did not provide any training on its OE expectations to Lyznicki; (2) Lyznicki and Dainty did not provide any student documents to Becker; (3) Lyznicki did not complete a "Job Aid" form and he and Dainty disposed of notes they had taken regarding Becker's OE training; (4) there was no communication between Lyznicki and Dainty concerning Becker's OE performance; (5) Human Resource policies were not followed in the termination process; and (6) Becker was not allowed to resign in lieu of termination. Omni denies that that there is any evidence that Omni policies or procedures were violated. (Dkt. #46, p. 10-15, 18-23). Further, Omni contends that in the absence of evidence showing that male trainees were treated differently during OE training and in the termination process, the alleged deficiencies cited by Becker cannot create an inference of discrimination.

## II. Standard of Review

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule

56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Id.* at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250.

### III.   Analysis

Becker claims Omni terminated her because of her gender (female) in violation of Title VII. Title VII makes it unlawful for an "employer . . . to discharge an individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment under Title VII, Becker must satisfy the *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973); *see Swackhammer v. Sprint/United*

*Mgmt. Co.*, 493 F.3d 1160, 1166-67 (10th Cir. 2007); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000); *Thomas v. Denny's Inc.*, 111 F.3d 1506, 1509 (10th Cir. 1997). Initially, Becker must establish a *prima facie* case of employment discrimination. *McDonnell Douglas,* 411 U.S. at 802. Once Becker establishes a *prima facie* case, the burden shifts to Omni to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Id.* at 803; *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 2555 (1981); *English v. Colorado Dept. of Corrs.*, 248 F.3d 1002, 1009 (10th Cir. 2001). If Omni makes this showing, the burden shifts back to Becker to show that Omni's stated nondiscriminatory reason is mere pretext for unlawful discrimination. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114-15 (10th Cir. 2007); *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).

### A.     *Prima Facie* Case

To establish a *prima facie* case, Becker must show that she (1) belongs to a protected class; (2) was qualified for the position; (3) was discharged despite her qualifications; and (4) the job was not eliminated after her discharge. *Baca v. Sklar,* 398 F.3d 1210, 1216 (10th Cir. 2005). Becker has presented evidence supporting the presence of a *prima facie* case: (1) she belongs to a protected class; (2) she was discharged from the training program; (3) she had the entry level experience and credentials to be admitted to Omni's pilot training program; and (4) the job was not eliminated. (Dkt. #46, p. 11). Thus, the focus shifts to Omni to proffer a legitimate, nondiscriminatory justification for Becker's termination.

### B.     Legitimate, Nondiscriminatory Justification

At this stage, the employer need not rebut evidence established under the first step; it must only rebut the inference that it acted out of discriminatory animus. *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1318 (10th Cir. 1992). The ultimate burden of proving discrimination

remains at all times on plaintiff. *Burdine,* 450 U.S. at 253. "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *Flasher,* 986 F.2d at 1316. If defendant carries its "exceedingly light" burden of production, *Zamora v. Elite Logistics, Inc.,* 478 F.3d 1160, 1165 (10th Cir. 2007), the presumption of discrimination drops out of the case, *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510-11 (1993).

Here, Omni maintains that it terminated Becker's employment due to her unsatisfactory performance during training. Becker was permitted some 53 hours of OE training prior to her termination. (Dkt. #31, p. 9, Fact 19; Dkt. #63, p. 3). This was more than twice the minimum 25 hours mandated by the FAA and well in excess of the 35 hours routinely provided by Omni. (Dkt. #63, p. 3). This period covered three weeks, nine flight legs and five ocean crossings. (*Id.*). The Flight Standards Department was put on notice of Becker's deficiencies by two separate Check Airmen who were assigned to administer OE training. (Dkt. #63, P. 3). The two Check Airmen never discussed Becker's progress with one another, therefore eliminating any suggestion of collusion to discriminate against Becker. (*Id.*). During the last phase of OE training, Becker was also observed by Brandenburg, Omni's Flight Standards Captain over the 777 fleet. (*Id.*). All three observed Becker's deficiencies and provided separate but concurring reports. (*Id.*). After the last four flight segments, Dainty and Brandenburg concluded that due to Becker's performance, she should not be released to fly the line. (Dkt. #31, p. 9, Fact 18, Dkt. #46, p. 8). Brandenburg advised Straley that he did not believe that additional OE was warranted. (*Id.*)

Straley acted on these consistent reports and made the decision to terminate Becker's employment. (Dkt. #31, p. 9, Fact 19). Straley concluded that Becker had made little or no progress since the first flight and had not demonstrated the skills required to fly international operations as a First Officer for Omni. (*Id.*).

The Court finds that Omni has satisfied its burden of production. *See Freeman v. United Airlines,* 52 Fed.Appx. 95, 103-04 (10th Cir. 2002) (concern for safety may constitute a legitimate non-discriminatory basis for adverse employment action to award summary judgment under Colorado law); *Occhione v. PSA Airlines, Inc.,* 886 F.Supp.2d 736, 746 (S.D. Ohio 2012) (Where the pilot repeatedly failed in his safety training, "it is undisputed that [the airline] had a sufficient reason to terminate Plaintiff."); *Segal v. Trans World Airlines, Inc.,* 63 F.Supp.2d 373, 378 (S.D.N.Y. 1999) (poor job performance, including disregard for airlines rules and safety regulations, is a legitimate, non-discriminatory reason for flight attendant's discharge); *Finazzo v. Hawaiian Airlines,* 2007 WL 2668711, *13 n. 16 (D.Haw. 2007) ("concerns for passenger safety" are a legitimate, non-discriminatory reason for adverse employment actions against an airline employee); and *Axtell v. Northwest Airlines, Inc.,* 1999 WL 33912056, *5-6 (D.Minn. 1999) (unique safety concerns of a commercial air carrier can be legitimate, non-discriminatory reasons for adverse employment decision). Thus, the burden now shifts to Becker to show that Omni's stated nondiscriminatory reason is mere pretext for unlawful gender discrimination.

### C. Pretext

Pretext can be shown one of three ways: (1) with evidence that the employer's reason for the stated action is false; (2) with evidence that the employer acted contrary to written company policy prescribing the action to be taken by the employer under the circumstances; or (3) with evidence that the employer acted contrary to an unwritten policy or contrary to company practice

when making the adverse employment decision. *Kendrick,* 220 F.3d at 1230. While "all doubts concerning pretext must be resolved in plaintiff's favor, [plaintiff's] allegations alone will not defeat summary judgment." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1324 (10th 1997). To defeat summary judgment, plaintiff must offer more than "[m]ere conjecture that the employer's explanation is pretext." *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999). Becker asserts that: (1) Omni's proffered explanation is unworthy of credence (false) because her performance was not severe enough to warrant her termination; and (2) there were deficiencies in the OE training and the termination process.

Becker may demonstrate falsity "by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Stinnett v. Safeway, Inc.,* 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir. 1994)). The Tenth Circuit has held that "the factfinder must be able to conclude, based on a preponderance of the evidence, that *discrimination was a determinative factor* in the employer's actions – simply disbelieving the employer is insufficient." *Young v. Dillon Cos.,* 468 F.3d 1243, 1250 (10th Cir. 2006) (quoting *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005)) (internal quotation marks omitted) (emphasis in original).

Becker concedes that there were deficiencies in her performance during OE training. (Dkt. #63, p. 3-4). She admits that after the OE flights with Lyznicki, he gave her "constructive and negative feedback" and indicated to her that she needed more OE time. (Dkt. #63, p. 3). She admits that Dainty debriefed her after each leg that she flew with him, pointing out various deficiencies in her performance. (Dkt. #63, p. 3-4). However, Becker contends that her shortcomings were not severe enough to warrant termination and that with additional training she

could have improved to the point of progressing out of OE. (Dkt. #46, Exh. D). The only evidence Becker presents to support this position, other than her personal belief, is the report and affidavit of Bjornstad, her expert witness. Although he has never flown with Becker or been employed by Omni, Bjornstad concedes the deficiencies occurred but opines that the Omni Check Airmen were harder on Becker than he would have been and he believes with additional training Becker could have mastered safely flying the 777. The Court is mindful of the case law holding that facts supported only by unsworn expert reports should not be considered for purposes of summary judgment. *Apodaca v. Discover Fin. Servs.,* 417 F.Supp.2d 1220, 1233 (D.N.M. 2006) (Facts based on unsworn expert report do "not meet the requirements of Fed. Rule Civ. Proc. 56(e) and cannot be considered by a district court in ruling on a motion for summary judgment.") (quoting *Carr v. Tatangelo,* 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003); *Employers Reinsurance Corp. v. Mid-Continent Cas. Co.,* 202 F.Supp.2d 1221, 1228 n. 6 (D. Kan. 2002) ("The Court does not consider . . . fact paragraphs which are supported by only an expert report."); *Sofford v. Schindler Elevator Corp.,* 954 F.Supp. 1459, 1462-63 (D.Colo. 1997) (unsworn expert reports are not competent evidence to consider in ruling on a motion for summary judgment). Although Becker's expert provided an affidavit affirming his opinions under oath, this does not transform his opinions into material facts as required by Fed.R.Civ.P. 56. To prevent a court from "granting summary judgment against a party who relies solely on an expert's opinion that has no more basis in or out of the record than [the expert's] theoretical speculations would seriously undermine the policies of Rule 56." *City of Chanute v. Williams Nat. Gas Co.,* 743 F. Supp. 1437, 1445 (D. Kan. 1990) (alteration in original) (quoting *Merit Motors, Inc. v. Chrysler Corp.,* 569 F.2d 666, 673 (D.C. Cir. 1977)). "If summary judgment can be avoided merely by presenting the unsupported opinion of an expert witness, it would be

virtually impossible for a court to grant summary judgment as long as the non-moving party could locate a sole expert who was willing to create a genuine issue of material fact for a price." *Squires v. Goodwin,* 829 F.Supp.2d 1041, 1060 (D. Colo. 2011) (quoting *State Farm Fire & Cas. Co. v. Miles,* 730 F.Supp. 1462, 1472 (S.D. Ind. 1990)).

Despite the substantial volume of case law against reliance on an expert's opinion to create a question of fact to defeat summary judgment, the Court need not reach the question of the admissibility of Bjornstad's report. Even if Bjornstad's opinions are viewed as admissible evidence proffered in support of Becker's contentions, they are not sufficient to establish an inference that Omni's stated reason for Becker's termination is unworthy of credence. The relevant question is not whether defendant's proffered justification is "wise, fair or [even] correct," but whether defendant "honestly believed those reasons and acted in good faith upon those beliefs." *Rivera,* 365 F.3d at 924-25. (internal quotation marks and citation omitted). A pretext challenge requires a court "to look at the facts as they appear[ed] to the person [who] ma[de] the decision to terminate plaintiff." *Kendrick,* 220 F.3d at 1231. It is the employer's perception of an employee's performance, and not an employee's subjective evaluation of her own performance that is relevant in determining pretext. *Furr v. Seagate Tech., Inc.,* 82 F.3d 980, 988 (10th Cir. 1996). A court's "role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young,* 468 F.3d at 1250.

Omni's termination decision was based on the various consistent progress reports of the Check Airmen who observed Becker during her OE training.[1]  (Dkt. #31, p. 5-10). There is

---

[1] Dainty's written report via email dated November 14, 2011 arrived after Becker was informed on November 14, 2011 of her termination. However, Dainty provided the information orally to

nothing in the testimony of Becker or the expert report of Bjornstad to create a question of fact as to whether Omni's evaluation of Becker's piloting deficiencies was honestly held by Omni or that Omni acted in good faith upon those evaluations in making the decision to terminate Becker's employment.

The Court need only briefly address Becker's remaining arguments, as they lack substantive merit in light of the evidence. From Becker's Response Brief, it appears that she further maintains that pretext can be demonstrated by: (1) Omni not providing any training on its OE expectations to Lyznicki; (2) Lyznicki and Dainty did not provide any student documents to Becker; (3) Lyznicki did not complete the "Job Aid" form and that he and Dainty disposed of their notes regarding Plaintiff's OE; (4) there was no communication between Lyznicki and Dainty concerning Becker's OE performance; (5) Human Resource policies were not followed in the termination process; and (6) Becker was not allowed to resign in lieu of termination. These contentions can be considered material only if they give rise to an inference of disparate treatment. Becker must present evidence that she was treated differently than male pilot trainees *See Braun v. St. Pius X Parish,* 827 F.Supp.2d 1312, 1324 (N.D. Okla. 2011) (when a defendant fails to apply its own procedures to all employees, rather than merely failing to apply them to the plaintiff, the fact that a company failed to follow its own procedures does not suggest that the employer's proffered reasons for its decision were pretextual).

With regard to Becker's first contention that Omni did not provide any training on its OE expectations to Lyznicki, the record reveals that Lyznicki was certified by the FAA to administer OE training on the 777 aircraft. (Dkt. # 63, p. 7-8). Any lack of instructions by Omni as to how

---

Captain Straley prior to the time that Becker was informed of her termination. (Dkt. #31, p. 9, Fact. 19).

he was to carry out that function would have had the same affect on male as well as female trainee pilots, and does not give rise to any inference of disparate treatment.

Becker's second contention is that she was not supplied with "study documents" during OE. Becker does not identify what "study documents" she believes she should have received. (Dkt. #63, p. 8). The evidence shows that the documents that were available to Becker on the 777 were the same documents that were available to all trainee pilots and hence this purported fact does not support an inference of disparate treatment. (*Id.*).

Becker's third contention of a purported irregularity is that Lyznicki did not complete an OE Job Aid form and both Lyznicki and Dainty took notes but later disposed of them. The record shows that the OE Job Aid form is an optional form and there is no requirement for Check Airmen to take personal notes, but if they do, there is no requirement for them to maintain the notes. (Dkt. #63, p. 8). Becker admits that she also made notes, but had no recollection as to where she put them and was not sure if she had them or not. (*Id.*). Absent a requirement covering the use of the Job Aid form or the maintenance of personal notes, there can be no inference of disparate treatment.

Becker's fourth contention is that Lyznicki did not provide any written documentation of her OE deficiencies to Dainty. The record shows that there is no Omni or FAA requirement for one Check Airman to communicate with another Check Airman concerning a student pilot's OE performance. (Dkt. #63, p. 9). Moreover, as with the other contentions, there is no evidence presented showing that Becker was treated differently than male trainee pilots.

Becker's fifth contention is that she was not afforded the "normal" Human Resource procedures in connection with discipline and termination. The record shows that Omni's progressive disciplinary procedures applied only to employees that had completed all their

training and such procedures did not apply to new-hire pilot training failures. (Dkt. # 63, p. 9-10). There is further no showing that Becker was treated differently than any other new-hire pilot at Omni who was unsuccessful in completing training.

Becker's last contention is that she was treated differently than Steven Elsner, Jr., a male pilot trainee who was permitted to resign prior to termination for OE deficiencies. The record shows that Omni's practice is to accept resignations in training failure situations if they are received prior to advising the pilot of the termination decision. (Dkt. #63, p.10). Becker did not attempt to resign. (*Id.*).

Becker has offered "no independent evidence, beyond [her] mere conjecture, that would cause a reasonable factfinder to infer that [gender] discrimination was the actual motivation for her termination." *Swackhammer*, 493 F.3d at 1171; *see Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) ("[P]laintiff['s] mere conjecture that [her] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."). This Court, therefore, concludes that Omni's termination of Becker was not pretextual.

## IV. Conclusion

The Court finds that Becker has failed to establish a genuine issue of material fact with respect to her Title VII gender discrimination claim. Therefore, Omni is entitled to summary judgment as a matter of law. Therefore, Omni's Motion for Summary Judgment (Dkt. #30) is **granted**.

IT IS SO **ORDERED** this  9  day of April, 2014.

James H. Payne
United States District Judge
Northern District of Oklahoma